[Civ. No. 25702.  First Dist., Div. Three.  Jan. 9, 1970.]

PAUL F. ROEMER, JR., Plaintiff and Respondent, v.
RETAIL CREDIT COMPANY, Defendant and Appellant.

---

**COUNSEL**

de Leonardo, Blake, Kelly, Aguilar & Leal, Dennis M. Bourquin and Cooper, White & Cooper for Defendant and Appellant.

Russell W. Federspiel and Lewis P. May for Plaintiff and Respondent.

---

**OPINION**

**DRAPER, P. J.**—In this libel action, jury verdict, on a 9 to 3 vote, was in plaintiff's favor for $7,500 compensatory damages and $50,000 exemplary damages. Judgment was entered upon the verdict and motion for new trial denied. Defendant appeals.

Defendant is a mercantile agency. The reports here asserted to be defamatory were made to insurance companies which were considering appointment of plaintiff as an agent, and had sought information as to his character and business standing. Falsity of the reports was admitted by defendant. The defense was based wholly on the qualified privilege (Civ. Code, § 47, subd. 3).

■ This privilege does extend to mercantile agencies (*Stationers Corp. v. Dun & Bradstreet, Inc.,* 62 Cal.2d 412, 418 [42 Cal.Rptr. 449, 398 P.2d 785]).

The privilege, however, is termed "qualified" or "conditional" because

it applies only to "a communication without malice" (Civ. Code, § 47, subd. 3). The parties correctly concede that the privilege is inapplicable here if the defamatory statements were made with malice. The principal fact issue submmitted to the jury was whether the evidence established malice.

The trial court correctly instructed the jury that if the privilege applies, even a false statement is not actionable, but that it can apply only if the statement is made without malice. It then continued: "However, if you find that the defendant knew the defamatory statement was false, and had an improper motive for publishing it, or was negligent in not making a sufficient inquiry into the facts upon which the statement was based, then you are instructed that the conditional privilege of defendant no longer existed." Defendant-appellant asserts error in this instruction.

There can be little question that the privilege is lost if defendant published the article with knowledge of its falsity (*MacLeod* v. *Tribune Publishing Co.,* 52 Cal.2d 536, 552 [343 P.2d 36], and cases there cited; Prosser on Torts (3d ed.) 822; cf. Rest., Torts, § 602). Addition of the conjunctive phrase "and had an improper motive for publishing it" seems an unnecessary elaboration, although, if the "improper motive" be spite or ill will, that alone may be enough to show malice (*Siemon* v. *Finkle,* 190 Cal. 611 [213 P. 954]; *Hearne* v. *De Young,* 132 Cal. 357 [64 P. 576]). This feature of the instruction, however, benefitted defendant and could in no way prejudice it.

The vice of the instruction lies in its disjunctive phrase, which amounts to a statement that mere negligence in inquiry amounts to malice.

"[O]rdinarily the privilege is lost if defendant had no reasonable grounds for believing his statements to be true" (*Brewer* v. *Second Baptist Church,* 32 Cal.2d 791, 797 [197 P.2d 713]). But this is not to say that mere negligence in making "a sufficient inquiry into the facts on which the statement was based" does, of itself, relinquish the privilege. "Mere inadvertenance or forgetfulness, or careless blundering, is no evidence of malice." (*Davis* v. *Hearst,* 160 Cal. 143, 167 [116 P. 530].)

While "[t]he concept of negligence is inherent in the issue of probable cause" (*Stationers Corp.* v. *Dun & Bradstreet, Inc., supra,* 62 Cal.2d 412, 422), the decisions long ago recognized that to constitute malice the negligence must be such as "evidenced a wanton and reckless disregard of the consequences and of the rights and of the feelings of others" (*Davis* v. *Hearst* (1911) *supra,* 160 Cal. 143, 172). Recently a statement made with "actual malice" has been defined as one made "with knowledge that it was false or with a reckless disregard of whether it was false or not" (*New York*

*Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 279-280 [11 L.Ed.2d 686, 706, 84 S.Ct. 710, 95 A.L.R.2d 1412]; see *A.B.C. Needlecraft Co.* v. *Dun & Bradstreet, Inc.* (2nd Cir. 1957) 245 F.2d 775).

We are satisfied that mere negligence in investigation of the facts, in the sense of oversight or unintentional error, is not alone enough to constitute malice. It is only when the negligence amounts to a reckless or wanton disregard for the truth, so as to reasonably imply a wilful disregard for or avoidance of accuracy, that malice is shown.

We are unimpressed with the suggestion that the instruction should reasonably be understood as requiring both knowledge of falsity and negligent inquiry. It simply does not so read. Moreover, this construction would make the instruction palpably redundant. ■ If the defamatory statement was known to the maker to be false when published the implication of malice would, save in remotely possible circumstances not even suggested here, be apparent to laymen as well as lawyers. Such intentional defamation not only need not be accompanied by negligence, but is the direct antithesis of negligence. Intentional defamation and mere negligence "[i]n the same act cannot even co-exist" (*Davis* v. *Hearst, supra,* 160 Cal. 143, 172).

■ The evidence before the jury, with reasonable inferences which could be drawn, would warrant a finding that defendant knew its report to be false, but it would also warrant a finding that the falsity of the report was the result of negligence by defendant's investigating employee. It follows that the error in the instruction goes to a crucial issue in the jury's fact-finding process.

Plaintiff points to other instructions upon the issue of malice. We note that "the prejudicial effect of a misstatement of an important principle of law cannot ordinarily be overcome by another declaration contradicting it" (*Cracknell* v. *Fisher Governor Co.,* 247 Cal.App.2d 857, 861-862 [56 Cal.Rptr. 64]). Here, moreover, there is no other instruction contradicting the quoted one. None dealt with or amplified the instruction equating malice with mere negligence. They but emphasize the factors of enmity and ill will as elements of malice and do not touch upon negligence. The award of punitive damages does not negate jury reliance upon the erroneous instruction. If the instructions on malice as an element of punitive damages could be deemed separated from those upon malice as destroying the privilege, they could be viewed as full and proper. But they are not so segregated. We note, also, that when the jury returned for rereading of instructions in the course of its deliberations, those which might be considered limited to punitive damages were not reread. Only those upon malice as it affects the privilege, including that which we here find erroneous, were

reread at that time. Thus we cannot apply the case relied upon by plaintiff (*Kramer* v. *Ferguson,* 230 Cal.App.2d 237 [41 Cal.Rptr. 61]). We conclude that the error was prejudicial.

For guidance upon retrial, we consider the trial court's rejection of the so-called Kirk report. A portion of the false statement sued upon attributed to plaintiff the marking of obscene language upon an office wall. A criminologist had attributed the writings to plaintiff. There is evidence that his report was examined by defendant's investigator before he made the statements sued upon. The trial court, however, sustained objection to the criminologist's report, upon the ground that it would necessitate undue consumption of time or create substantial danger of misleading the jury (Evid. Code, § 352). Although the falsity of defendant's statements was admitted, there remained the crucial issue of malice. Defendant's reliance upon the criminologist's report would tend to negate malice by showing reasonable grounds for belief in the truth of the statement when made. Upon the record now before us, this issue was not adequately covered by the oral testimony, particularly in light of the somewhat inflammatory nature of the statement made by defendant. Unless the issue is more fully covered by other evidence at the new trial, the report should be admitted.

Judgment reversed.

Brown (H. C.), J., and Caldecott, J., concurred.

A petition for a rehearing was denied February 6, 1970, and respondent's petition for a hearing by the Supreme Court was denied March 4, 1970. Tobriner, J., was of the opinion that the petition should be granted.